[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This lawsuit first came to this Court by Summons and Complaint dated December 8, 1997 and returnable January 6, 1998 claiming a dissolution of marriage, alimony, counsel fees, an equitable division of real and personal property and any other remedy which in law or equity may appertain.
A motion for temporary alimony and other relief accompanied the complaint.
On January 23, 1998 the Court, Solomon, J., entered certain orders including awarding the Plaintiff temporary alimony of $260.00 weekly.
The Defendant appeared by counsel on December 11, 1997.
On December 17, 1997 the Defendant filed an Answer to the Complaint and a Cross Complaint.
The Defendant's claims were similar to the Plaintiff's, a dissolution of marriage, alimony and a property settlement as per Connecticut General Statutes (C.G.S.) § 46b-81.
Financial affidavits were filed by the parties.
On April 13, 1998 the Court, Solomon, J., entered an order pertaining to borrowing against insurance policies.
On April 23, 1998 the Plaintiff filed a contempt motion, pendente lite, as concerns the Defendant's obligation to apply for insurance proceeds and equally apportion the same between the Plaintiff and the Defendant, but the same was not acted upon prior to trial.
The Plaintiff and the Defendant with their respective counsel appeared before the Court on May 27, 1998 and June 3, 1998 for hearing.
The Court makes the following findings of fact.
The Court has jurisdiction. CT Page 7220
There is no issue as to military service.
More than 90 days have elapsed since the return date and all statutory stays have expired.
The Plaintiff and the Defendant were united in marriage on March 29, 1974 at Waterford, Connecticut.
The parties have been residents of the State for more than 12 months prior to the bringing of the Complaint.
There are no children issue of this marriage.
The parties had earlier been residents of Florida but returned to Connecticut with the intention of permanently residing here.
The Plaintiff and the Defendant first met in 1973 at which time the Plaintiff had been divorced from a prior marriage and the Defendant was a widower.
At the time of the marriage of the parties, the Plaintiff had three children issue of her prior marriage; Michael, age 17, Susan, age 15 and Kenneth, age 5.
At the time of the marriage the Defendant had four children issue of his marriage to his late wife; Kelly, age 13, Donald Jr., age 11, Michael, age 7 and William, age 9.
The Plaintiff received weekly child support from her former husband of $50.00.
Plaintiff's son Michael shortly after the marriage went to live with his father.
Five years ago the Defendant had initiated a divorce petition but the matter was never finalized.
Plaintiff's daughter Susan was asked to leave the marital home at age 19 by the Defendant who felt she created dissension in the home.
There were many problems in the home involving the children from the parties' prior unions relating to discipline, lack of CT Page 7221 helping in the home and arguments and bickering.
The Plaintiff and the Defendant were at odds as to the guidelines for raising children and discipline.
The Defendant's daughter Kelly ran away at age 15 on Christmas Eve and remained away from the home for one year.
At the time of the marriage, the Defendant was employed at Millstone as a foreman.
The Defendant worked long hours and was frequently required to work out of state including Illinois, Massachusetts and New York.
At the end of the day, the Defendant would have a drink or a couple of beers but was never intoxicated or abusive relative to the consumption of alcohol.
The children of each parties' former marriage were frequently at odds with each other.
There were intemperate comments made between the two older girls on each side. On one occasion, Kelly, the Defendant's daughter, told the Plaintiff she was ruining her father's life.
In 1979 the parties sold the home and residence. At time of sale, the property was in joint names but had formerly been in the Defendant's name alone.
The Plaintiff brought the sum of $15,000.00 into the marriage from her earlier divorce settlement.
Some of these monies were used to repair the home and to purchase a car.
In due course, a new residence was purchased on Laurel Crest Drive in Waterford in the joint names of the parties.
There was friction and resentment between the Plaintiff and the Defendant's daughter Kelly.
On one occasion, Kelly sent a stuffed mongoose and snake to the Plaintiff, which caused the Plaintiff anguish and upset. CT Page 7222
Some of the Defendant's children became involved in substance abuse, which caused problems and there were school problems.
The Defendant's children were involved in sports activities and the Plaintiff assisted in providing transportation.
In 1989, the Plaintiff secured a part-time job with JC Penney at the Crystal Mall, working 16 to 20 hours a week as a clerk. Plaintiff worked for JC Penney for five years.
Prior to the marriage, the Plaintiff had worked at Two Guys answering telephones.
Plaintiff's education extends through securing a G.E.D. The Defendant is a high school graduate. In 1991, the Plaintiff's daughter Susan took her own life.
The Plaintiff was in counseling after her daughter's death for two years.
Plaintiff, for a time, was on tranquilizers and antidepressants.
The parties sold the Laurel Crest Drive residence in 1994 and moved into an apartment in East Lyme, where they resided for 1-1/2 years, after which they moved to Edgewater, Florida, where they resided for two years.
The parties subsequently returned to Connecticut.
The Defendant has been and is still involved in litigation regarding asbestos, mindful of his years as a steamfitter.
Each party now has their own apartment.
The Plaintiff's principal lament at this time is a claim of drinking by the Defendant and lack of communication.
The Plaintiff presently consults with a physician and takes medication including Prozac, Zokar and Transine.
Plaintiff has osteoarthritis, has pain in both knees and can't stand too long.
Plaintiff will be age 64 in August. CT Page 7223
Defendant is age 62.
Plaintiff went through surgery with Dr. Engel in April 1998 for a condition of polyps in the uterus.
The parties' Florida home was sold in November 1997.
After selling the Florida residence and returning to Connecticut, the Plaintiff traveled to California where she remained until January of 1998.
Plaintiff recently received the sum of $7,700.00 from the Defendant incident to the order of Solomon, J., as concerns borrowing against certain life insurance policies of the Defendant.
Attorney Michael Shapiro was earlier appointed an arbitrator to determine personal property ownership and filed a report with the Court designating the items to go to each.
Plaintiff acknowledges receiving everything shown in the report to which she is entitled.
The Defendant's son, Michael, presently resides with him.
The Plaintiff receives $288.00 monthly from Social Security.
The Defendant inherited certain shares of ATT from his late father, which constituted the foundation for the present stock portfolio.
Dividends were reinvested over the years.
During the marriage, the Defendant turned over his paycheck every week, including when he worked out of state, to the Plaintiff and she handled all the funds and paid all the bills.
The Plaintiff conferred with an attorney in 1992 as to starting a divorce, but did not follow through on it.
The authorities were never called to the home of the parties as concerns any problems or difficulties between them during the marriage. CT Page 7224
Plaintiff terminated her employment at JC Penney in 1995.
When the parties moved to Florida, the Plaintiff purchased a new car for $12,000.00. The Defendant got her old car.
After returning from Florida, and just prior to leaving for California, the Plaintiff took $95,000.00 from joint funds of the parties, and placed the funds in a Certificate of Deposit with Fleet Bank in her name alone.
Plaintiff also took funds from a joint checking account and never disclosed her departure to California or the financial acts until after she had left.
As a result, the Defendant wrote checks that were returned for insufficient funds.
Plaintiff did not communicate with the Defendant during her two-month stay in California.
En route on her return from California, the Plaintiff stayed in Virginia for several weeks but did not communicate with the Defendant.
The Defendant has been retired for 2-1/2 years from Local 777 of the Steamfitters Union.
The Defendant worked for 16 years at Millstone Units 2 and 3 for the mechanical engineering contractor C.N. Flagg.
The Defendant often worked seven days a week, 14 to 15 hours per day.
The Defendant coached Little League for 15 years and helped in coaching football.
The Defendant tried to resolve conflicts between the seven children.
The Defendant was never aware until recently of some of the IRA's in Plaintiff's name.
The Defendant tried to help the Plaintiff with her grief after the death of Susan. CT Page 7225
The Plaintiff kept all of her earnings at JC Penney.
Fifteen years ago, the Defendant was arrested for DWI near his home. No exhibit or testimony was made known to the Court as to the disposition of the arrest.
During the marriage, there were a few vacations and some weekend trips.
One of the Defendant's children presently resides with him and pays $100.00 weekly as room and board.
It is anticipated that the child will vacate shortly.
The Defendant recently loaned one of his sons $1,000.00 to help in the purchase of a car.
The Defendant, while actively engaged in employment, was rarely laid off and never missed work.
Due to an injury sustained by the Defendant in 1978, he has a 7% impairment of his right lower extremity; eventually knee replacement will be necessary.
The Plaintiff and the Defendant are both in a retired status although the Defendant does not yet receive Social Security.
The Defendant receives $1,690.00 monthly as a service pension from the Connecticut Plumbers and Pipefitters Pension Fund.
The Defendant receives $1,382.00 monthly as a pension from the Plumbers and Pipefitters National Pension Fund.
Recently, the Plaintiff and the Defendant met with the thought of further counseling, but it proved fruitless and the Plaintiff advised that, "It's all over and I want the divorce."
 Discussion
This is a marriage of 24 years. This is the second marriage for both parties.
There were altogether seven children issue of the prior marriages that presented many problems to the Plaintiff and Defendant, who both tried to do the best they could, but there is CT Page 7226 no question as to the severe stresses put on the marriage because of the difficulties in raising the children, and the diverse approach by the Plaintiff and Defendant as to matters of discipline and guidance.
The Defendant was a hard worker who never lost time from his job and worked long hours.
The Plaintiff appears to have been a good homemaker.
The problems with the children of the parties' prior marriages, the Court believes, overwhelmed the parties.
Neither party is solely at fault for the breakdown of the marriage.
The Court enters the following orders.
The Defendant, should further recovery be had as concerns the asbestos litigation, shall retain said proceeds as his sole and separate property, mindful of the fact that future recovery, if any, would require the Defendant's physical condition to be malignant.
The findings made by arbitrator Michael Shapiro, Esq., concerning the division of personal property, furnishings and the like, are adopted and made orders of the Court.
The shares of common stock to wit, Ameritech, Lucent, U.S. West, SBC, ATT, Bell South and Bell Atlantic shall be the sole property of the Defendant mindful of its source from his late father.
The Plaintiff may have the 1994 Toyota Camry motor vehicle and the Defendant may have the 1987 Buick motor vehicle, both of which vehicles are free and clear of any lien.
Each party may retain the Social Security benefits to which they are entitled or vested.
The Plaintiff to retain her Social Security benefits and the Defendant to retain his benefits.
The Plaintiff and the Defendant shall equally share and pay the debt due Climatron (air conditioner repairs) in the amount of CT Page 7227 $386.92 in the event that it is determined that the debt is not covered by the existing warranty.
The Plaintiff wife is awarded one-half of the Defendant's gross monthly pension benefits from both the Plumbers and Pipefitters National Pension Fund and the Connecticut Plumbers and Pipefitters Pension Fund by a QDRO, along with a one-half share of any and all cost of living increases or any future increase in monthly benefits that might be awarded by the Funds to the Defendant by a QDRO.
In addition, the Plaintiff wife shall be designated the Surviving Spouse for the Post-Retirement Surviving Spouse Pension benefit.
The Defendant shall cooperate as necessary in order that the Plaintiff may secure continuation of the currently existing medical insurance. The Plaintiff shall be responsible for the cost thereof.
As to the Certificate of Deposit in the amount of $92,000.00 at Fleet Bank, Old Saybrook office, the Plaintiff shall have the sum of $40,000.00 and the Defendant shall have $52,000.00 mindful of what each brought to the marriage and the original real estate equity of the Defendant in the Deerfield Road real estate.
The Plaintiff may retain her JC Penney pension.
The Plaintiff has already received the sum of $7,732.53 as her one-half share of certain cash values of insurance policies and may retain the same. The Defendant may retain his like share and may retain the policies as concerns any further or future benefits or value.
The Plaintiff and the Defendant shall share equally, one-half to each as to:
a. any funds remaining in the Liberty Bank, either savings or checking.
 b. the IRA Citizens Bank, $14,357.00 the IRA, Nationwide Annuity $32,169.00 the IRA, Liberty Bank $6,225.00 the IRA, Pipefitters Trades Annuity $1,394.00 the IRA, First Union, $4,454.00
CT Page 7228
by QDRO as may be necessary.
Each party shall be responsible for their own attorney's fees.
No order of any periodic alimony is awarded to either party.
The Court has considered all relevant statutory authority including C.G.S. §§ 46b-81 and 46b-82.
Austin, J.